[No. 5015.]
[C. A. No. 2565.]

The Chicago, Burlington & Quincy Railroad
Company v. Roberts.

1. **Negligence—Railroads—Animals—Evidence.**

In an action against a railroad company for the value of a horse alleged to have been killed by the negligence of defendant in running its train, where the uncontradicted evidence shows that the engineer in charge of the train discovered the animal on the track as soon as it was possible for him to see it and that he did everything that he could to stop the train and to scare the animal off the track and that it was impossible to have stopped the train in time to avoid running over the animal, a verdict and judgment for plaintiff will be reversed.

2. **Same.**

In an action against a railroad company for the value of a horse alleged to have been negligently killed by defendant's train, the fact that the body of the animal was found by the side of the track at a point where the track could have been seen by the engineer in time to have stopped the train and several hundred yards distant from the point on the track where the engineer testified that it was struck, was not sufficient to warrant the inference by the jury that the animal was killed at the point where its body was found, against the positive testimony of the engineer that it was struck at a different point.

3. **Same.**

In an action against a railroad company for the value of an animal alleged to have been negligently killed by defendant's train, where plaintiff called the engineer of the train as a witness he vouched for his credibility, and while he might be permitted to contradict his statements by other competent witnesses, he would not be permitted to impeach his credibility or otherwise discredit his testimony.

*Appeal from the County Court of Weld County.*
*Hon. John T. Jacobs, Judge.*

Messrs. Wolcott, Vaile & Waterman and Mr. W. W. Field, for appellant.

Mr. J. E. Garrigues and Mr. E. C. Smith, for appellee.

Mr. Justice Goddard delivered the opinion of the court:

This is an action to recover the value of a horse alleged to have been killed through the negligent operation of a train of cars by the engineer of the appellant. Judgment in favor of appellee for $100 and costs. Appellant brings the case here for review.

On September 20, 1893, the appellee (plaintiff below) found a horse that belonged to him lying dead by the side of the defendant's railroad track, partially buried, with severe bruises upon his right shoulder and other portions of the body, at the foot of an embankment or fill on which the railroad track of appellant was located, about 1,500 feet east of a deep cut between Box Elder Creek and Keene station. Appellee and one of his witnesses testified that there was a mark about six feet wide on the side of the incline of the embankment extending up about twelve feet from the bottom which they took to be an indication that the horse had slidden down the embankment at that place. They found no marks that indicated that the horse had been upon the track or top of the embankment; that the injuries to the horse were such as would result from his being struck by a train. The only direct evidence that a horse was struck by a train operated by the employees of the appellant on that morning in that vicinity was that of Louis Bartlett, who was called by the plaintiff. He testified that he was a locomotive engineer in the employ of the appellant company; that he ran an engine with a train of seven passenger coaches known as "The Chicago Special" from Denver east on the morning of the 19th of September, 1893; that as he passed out of a deep cut east of Box Elder Creek, and while running on schedule time of about 35 or 40 miles an hour, he saw a bunch

of four horses about 100 yards distant on the track; that three of them ran down the bank and got away, but one seemed to lag behind; that he applied the air brakes, reversed the engine, blew the whistle and rang the bell; that the horse ran about 100 yards before the engine overtook him; that he discovered the horses at the earliest possible moment, and that he did all he could to stop the train and avoid the collision, and succeeded in reducing its speed to about ten miles an hour when he collided with the horse and shoved him off the track; that he brought his train to a standstill in about 300 feet after striking the horse; that the last he saw of the horse he was up and limping along south.

From Box Elder Creek the railroad ascends a very steep grade, near the center of the cut, which is about one-half mile long; the highest point is reached, and the road descends on a down grade eastward from that point. Mr. Thompson, a witness on behalf of the plaintiff, a practical railroad engineer of twenty years' experience, testified that a train of seven coaches with all the latest improvements, including Westinghouse air-brakes, on a perfectly level track, ought to have been stopped in 200 yards. If slightly down grade, it would make a difference of perhaps 50 or 100 yards; that in 200 yards, the engineer ought to have been able to reduce the speed of the train so that when it reached the horse it would be going less than ten miles an hour.

If, therefore, the engineer discovered the horse at the earliest possible moment, and he was then 100 yards down the track, it is very evident from the foregoing testimony that it was impossible to have stopped the train in time to have avoided the collision. But counsel for appellee contend that the jury was at liberty to accept the fact that the body of the horse, in the condition described, being found

2,000 feet distant from the cut, was proof that he was struck and killed at that point, and that the engineer saw, or could have seen, the horse, had he exercised reasonable care, in time to have stopped the train.

This inference is not only unwarranted in view of Bartlett's testimony, but, as stated by the court of appeals in its opinion on the former review of this case, it is far-fetched and insufficient in itself to sustain the conclusion even that the horse was killed by appellant's train.

It is furthermore evident that if it is to be inferred that the horse was struck and killed at the point where found, that he was struck by some other engine than the one operated by Bartlett, in which event there is no evidence of the circumstances under which, or the manner in which, the collision occurred, and consequently no evidence of negligence on the part of the employees of the defendant company. But, as above stated, this inference cannot be indulged in the face of Bartlett's testimony. The plaintiff, by calling him as his witness, vouched for his credibility, and while he might be permitted to contradict his statements by other competent witnesses if he was able to do so, he would not be permitted to impeach his credibility, or otherwise discredit his testimony. He testified fully and with apparent candor to all the circumstances under which the accident happened. There was no evidence that tended to show that his testimony was not true. In these circumstances, the jury had no right to arbitrarily and capriciously disregard his testimony, or any part thereof.—*Lomer v. Meeker*, 25 N. Y. 361; *Newton v. Pope*, 1 Cowen 109; *McMahon v. People*, 120 Ill. 584; *Drew v. Watertown Ins. Co.*, 6 S. Dak. 335; *Railway v. Shoecraft*, 53 Ark. 96; *Evans*

*v. George*, 80 Ill. 51; *Seaboard Air-Line v. Walthour,* 117 Ga. 427; *Felton v. Anderson,* 66 S. W. 182.

It therefore appearing from the uncontradicted and unimpeached testimony of Bartlett that the company was in no way in fault, the court ought to have directed a verdict for appellant. We are justified in assuming that the appellee can make no other or different showing upon another trial. The judgment will, therefore, be reversed, and the cause remanded with directions to dismiss the action. ·

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.